UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 MAR 16 PM 2:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) Civil Action No. CV-96-S-2464-NE
)
ELEANOR FAY RESSLER, PAUL )
EUGENE RESSLER, CULLMAN )
SAVINGS AND LOAN ASSOCIATION, )
and STATE OF ALABAMA )
DEPARTMENT OF REVENUE, )
)
Defendants. )

ENTERED
MAR 17 1998

## MEMORANDUM OPINION

The United States filed this action on behalf of the Internal Revenue Service to foreclose its liens upon two parcels of real property jointly owned by defendants Paul Ressler and the State of Alabama. The State of Alabama executed against the same property and obtained a Sheriff's Deed on December 16, 1994, foreclosing the undivided interest of defendant Eleanor Ressler in the real property which is the subject of this case.

The federal and state tax liens both arise from tax years 1988 through 1992. Tax returns for those years were received by the State of Alabama and the Internal Revenue Service at approximately the same time. The State recorded its lien before the IRS.

### I. BACKGROUND

This case involves a conflict between a federal tax lien arising under the provisions of 26 U.S.C. §§ 6321 and 6322, and, an antecedent state tax lien arising under Alabama Code § 40-29-20.

25

Section 6321 of the federal statute provides that:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. Section 6322 adds:

> [T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time.

Alabama Code § 40-29-20 is substantially similar to 26 U.S.C. § 6321, and provides that:

> If any person liable to pay any tax ... neglects or refuses to pay the same, the amount ... shall be a lien in favor of the State of Alabama upon all property and rights to property, whether real or personal, tangible or intangible, belonging to such person.

Following a pretrial conference, the parties entered into the following stipulations:

1. Prior to 1990, defendants Eleanor Ressler and Paul Ressler jointly acquired two parcels of real property in Cullman County, Alabama. The first parcel was approximately 31 acres and identified with a street address of 1104 County Road 998. The second parcel was approximately one acre and identified with a street address of 1121 County Road 998.

2. Cullman Savings Bank has a mortgage lien against the 31-acre parcel which is senior to all other liens against that parcel, including the federal and state tax liens.

3. Federal income taxes were assessed against Eleanor Ressler based on tax returns filed with the Internal Revenue Service, on the dates and for the amounts stated below:

2

| YEAR | Date Return Received | Date Tax Assessed | Unpaid Amount of Assessment |
|---|---|---|---|
| 1988 | June 16, 1993 | August 16, 1993 | $30,984.40 |
| 1989 | June 16, 1993 | August 23, 1993 | $36,488.69 |
| 1990 | June 16, 1993 | August 30, 1993 | $25,566.14 |
| 1991 | June 16, 1993 | August 30, 1993 | $23,074.22 |
| 1992 | June 14, 1993 | July 19, 1993[1] | $23,022.11 |

4. On July 30, 1993, the State of Alabama entered and mailed Notices of Tax Determination and Demand for Payment to Eleanor Ressler for state income tax liabilities for the years 1988 and 1989. On August 3, 1993, the State of Alabama entered and mailed Notices of Tax Determination and Demand for Payment to Eleanor Ressler for state income tax liabilities for the years 1990, 1991, and 1992. The state income tax liabilities approximated $17,000.

5. The State of Alabama made preliminary income tax assessments against Eleanor Ressler for those same tax years for an adjustment to the admitted tax liabilities to the State of Alabama on October 22, 1993, which totaled approximately $17,000.

6. The State of Alabama made five final income tax assessments for those same tax years for an adjustment to the admitted tax liabilities to the State of Alabama on January 20, 1994, which totaled approximately $17,000.

7. On February 11, 1994, the State of Alabama filed a Notice of Lien for Taxes in the Office of the Judge of Probate, Cullman County, Alabama for the state income tax liabilities of Eleanor Ressler for the three years 1988 to 1992.

8. On May 13, 1994, the Internal Revenue Service filed a Notice of Federal Tax Lien in the Office of the Judge of Probate, Cullman County, Alabama for the federal income tax liabilities of Eleanor Ressler for the years 1988 to 1992.

9. A Sheriff's Deed concerning the two subject parcels was executed in favor of the State of Alabama on December 16,

---

[1] The State of Alabama does not stipulate to these dates for the 1992 tax year. See infra note 4 and accompanying text.

3

1994 based on a judgment execution by the State of Alabama against the remaining interest of Eleanor Ressler. The Sheriff's Deed was signed on June 13, 1995, and recorded in Cullman County Probate Court on January 17, 1997. The State of Alabama did not provide notice to the Internal Revenue Service of the described execution and deed. The Sheriff's Deed did not alter or foreclose any prior interests, liens, or levies of either the State of Alabama or the Internal Revenue Service.

10. The United States filed this foreclosure action on September 19, 1996 and filed a Notice of Lis Pendens with the Office of the Judge of Probate, Cullman County, Alabama on or about the same day.

(Stipulated Facts filed November 12, 1997: Document No. 22.)

The action presently is before the court on the United States' motion for partial summary judgment and defendant Paul Ressler's motion to compel settlement. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the government's motion is due to be granted and defendant's motion denied.

## II.  GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States moves for partial summary judgment on the issue of the priority of the federal and state tax liens. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*,

4

121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)). Once the movant's initial burden is met, the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)). In meeting its burden, the nonmoving party may "avail itself of all facts and justifiable inferences in the record taken as a whole." *Id.* (quoting *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citations omitted)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Allen*, 121 F.3d at 646 (quoting *Tipton*, 965 F.2d at 999 (citations omitted)). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

5

Thus, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

### III. TAX LIEN PRIORITY

Federal tax liens do not automatically acquire priority over all other liens. *United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993). Rather, the priority of federal tax liens in relation to competing liens is a federal question, determined by application of the common law rule of "the first in time is the first in right." *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L. Ed. 520 (1954); *see also United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L. Ed. 264 (1955) (priority of federal tax liens is "always a federal question to be determined finally by the federal courts"). A lien which is first in time will be deemed first in right if, but only if, it is "perfected" under federal law. *McDermott*, 507 U.S. at 449, 113 S.Ct. at 1528 ("Our cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected'....")(citing *New Britain*, 347 U.S. at 84, 74 S.Ct. at 369). The first question this court must answer then is, which liens were <u>perfected</u> first?

**A. Which Liens Were Perfected First?**

6

The court's analysis depends in part upon the dates on which various events occurred, and the legal significance of those events. The following chart summarizes relevant information.

| Event | 1988 | 1989 | 1990 | 1991 | 1992 |
|---|---|---|---|---|---|
| Federal Tax Returns Received | 6/16/93 | 6/16/93 | 6/16/93 | 6/16/93 | 6/14/93[2] |
| State's Notice & Demand Letters | 7/30/93 | 7/30/93 | 8/3/93 | 8/3/93 | 8/3/93 |
| Federal Taxes Assessed | 8/16/93 | 8/23/93 | 8/30/93 | 8/30/93 | 7/19/93[3] |
| State's Preliminary Assessment | 10/22/93 | 10/22/93 | 10/22/93 | 10/22/93 | 10/22/93 |
| State's Final Assessment | 1/20/94 | 1/20/94 | 1/20/94 | 1/20/94 | 1/20/94 |
| State's Notice of Lien Filed | 2/11/94 | 2/11/94 | 2/11/94 | 2/11/94 | 2/11/94 |
| IRS's Notice of Lien Filed | 5/13/94 | 5/13/94 | 5/13/94 | 5/13/94 | 5/13/94 |
| Sheriff's Deed Executed | 12/16/94 | 12/16/94 | 12/16/94 | 12/16/94 | 12/16/94 |

1. **Perfection of federal liens**

Federal tax liens need not be filed to gain priority over competing interests: rather, they are perfected at the time taxes are <u>assessed</u>. 26 U.S.C. § 6322 ("the lien imposed by section 6321 shall arise at the time the assessment is made"); see also, e.g., McDermott, 507 U.S. at 448, 113 S.Ct. at 1527 ("<u>Upon that assessment</u>, the law created a lien in favor of the United States on all real and personal property belonging to the [taxpayer]")(emphasis added). Thus, only events which occurred

---

[2] This date is disputed by the State of Alabama: see discussion at page 8-9 infra.

[3] This date also is disputed by the State of Alabama: see discussion at page 8-9 infra.

7

before the federal tax assessments could act to prime the resulting federal liens.

Here, federal taxes were assessed against the Resslers for the years 1988 through 1992, respectively, on the following dates:

| | |
|---|---|
| 1988 | August 16, 1993 |
| 1989 | August 23, 1993 |
| 1990 | August 30, 1993 |
| 1991 | August 30, 1993 |
| 1992 | July 19, 1993 |

(Stipulated Facts at 2, ¶ 3.) IRS assessments are presumptively correct. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Moreover, the State of Alabama stipulates that the assessment dates for the years 1988 through 1991 are accurate. Accordingly, the court accepts the assessment dates for those years as the dates on which federal liens arising from those assessments were perfected.

The State of Alabama refused to stipulate to the accuracy of the 1992 assessment date provided by the IRS, however. The state argues that, because all the returns were mailed to the IRS on the same date and in the same envelope, the 1992 assessment could not have been made more than one month before the others, as claimed by the United States. Evidence must be construed in the light most favorable to the non-moving party on a motion for summary judgment. Therefore, the court rejects the proffered date for the 1992 assessment. Instead, the court assumes that the 1992 federal tax assessments occurred <u>after</u> the state's notice and demand letter was

8

mailed, consistent with the other tax years.[4] In any event, that curious discrepancy does not change the result in this case. The state liens must have been perfected before the federal tax assessments arose if they are to prime the federal liens. Only one event could possibly have accomplished that: the mailing of the state's notice and demand letters.

### 2. Perfection of state liens

The State of Alabama mailed "Notices of Tax Determination and Demands for Payment" for tax years 1988 and 1989 to Eleanor Ressler on July 30, 1993, and, for tax years 1990, 1991, and 1992 on August 3, 1993. Both actions occurred before federal taxes for those years were assessed.[5] No other action by the State occurred before the last federal tax assessment was made on August 30, 1993.

Therefore, the perfection question reduces to whether Alabama's liens were perfected at the time of its notice and demand letters. If so, the State's liens prevail. If not, the federal liens are superior.

The rule for perfection of non-federal liens is different than the rule for federal liens. Non-federal liens are "perfected in the sense that there is nothing more to be done to have a choate lien — when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *New Britain*, 347 U.S. at 84, 74 S.Ct. at 369.

---

[4] The precise date on which the 1992 assessment occurred cannot be ascertained from the present record.

[5] As already noted, for purposes of deciding this motion, the court assumes that the 1992 federal taxes were assessed _after_ the state's notice and demand letter was mailed, consistent with the other tax years.

9

Most courts also impose an additional requirement: summary enforceability. *Monica Fuel, Inc. v. Internal Revenue Service*, 56 F.3d 508, 512 (3d Cir. 1995)("We agree that a right to enforce a lien summarily (that is, without a judicial proceeding) is a requirement of choateness in addition to the tripartite rule of fixed identity, property and amount"); *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir. 1990)("[T]he state lien holder must show that he had the right to enforce the lien at some time prior to the attachment of the federal lien"), *cert. denied*, 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991); *T. H. Rogers Lumber Co. v. Apel*, 468 F.2d 14, 18 (10th Cir. 1972)("This requirement can be met only if the claim is final; that is, not subject to a judicial contest as to its amount, and also only if it is enforceable by summary proceedings")(citations omitted); *United States v. Utah State Tax Comm'n*, 642 F. Supp. 8, 10 (D. Utah 1983)(nonfederal lien must be summarily enforceable and not have conditions that affect its viability); *cf. Burrus v. Oklahoma Tax Commission*, 59 F.3d 147 149 (10th Cir. 1995)(explaining its holding in *T. H. Rogers* to mean "that at the time of enforcement, whenever that should occur, a lienholder may satisfy its debt by resort to a summary proceeding because the lien will be both choate and perfected"); *see also United States v. McDermott*, 507 U.S. at 453 n.5, 113 S.Ct. at 1530 n.5 (lien on property not yet owned was not perfected because it was not definite, contingent, and summarily enforceable at time of filing).

10

The United States does not dispute that, at the time of the state's notice and demand letters, the identity of the lienors and the property subject to the liens were established. The two questions presented here are: whether the amount of the state's liens was established at the time of notice and demand; and whether the state's liens were summarily enforceable at the time of notice and demand.

### (a) Was the amount of the lien established?

The Supreme Court instructs that the proper focus of such an inquiry is on whether the state's liens were free from "contingencies" that would prevent execution at the relevant time. See Security Trust & Savings Bank, 340 U.S. at 50, 71 S.Ct. at 113. In Security Trust, the Supreme Court refused to accord priority to an attachment lien not yet reduced to judgment, because "[n]umerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus, the attachment lien is contingent or inchoate — merely a lis pendens notice that a right to perfect a lien exists." Id.

A review of the statutory two-step procedure under which Alabama tax authorities enforce that State's tax liens reveals that the amounts of such liens are not fixed at the time a notice and demand letter is issued. Instead, that letter begins an arms-length negotiation process between the taxpayer and the Alabama Department of Revenue designed to uncover the actual amount of taxes owed. A taxpayer who does not pay the requested amount upon

11

receipt of a notice and demand letter will receive a preliminary assessment of his tax liability, as determined by the Department of Revenue. The taxpayer has a 30 day period within which to object to that assessment. Upon timely objection to a preliminary assessment, the department

> shall schedule a conference with the taxpayer for the purpose of allowing the taxpayer and the department to present their respective positions, discuss any omissions or errors, and to attempt to agree upon any changes or modifications to their respective positions.

Alabama Code § 40-2A-7(b)(4)(a). A final assessment is made only after those objections are resolved.[6] *Id.* at 7(b)(4)(b). Hence, any assessment made before a taxpayer has had an opportunity to effect such "changes or modifications" cannot be said to have fixed the amount of the lien for purposes of priority. Under this statutory scheme, the State's liens clearly were subject to "[n]umerous contingencies" of the sort described in *Security Trust* at the time the notice and demand letters were sent.

Indeed, the State characterizes its preliminary assessment as a complaint, and the final assessment as a judgment. (State of Alabama, Department of Revenue's Brief in Opposition to the Motion for Partial Summary Judgment of the Internal Revenue Service at 6 and 9.) Such characterizations support a finding that the State's notice and demand letter was nothing more than a first estimate of the Resslers' tax deficiency, subject to "changes or modifications"

---

[6] An accelerated procedure is permitted when the Department of Revenue makes a jeopardy determination, *i.e.*, when the department believes the taxpayer is about to remove the subject property from state jurisdiction or otherwise take steps which would make recovery by the state impossible. See Alabama Code § 40-29-91. No such jeopardy determination was made in this case.

12

upon timely, valid objections by the Resslers.[7]

### (b) Were the liens summarily enforceable?

In *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), the Supreme Court concluded that a state tax lien primed competing federal tax liens because it was "summarily enforceable" upon assessment and demand. *Vermont*, 377 U.S. at 359 and n.12, 84 S.Ct. at 1272-73 and n.12 ("it is as true of Vermont's lien here as it was of the federal lien in *New Britain* that 'The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt'"). The State of Alabama glosses over this significant distinction by asserting that the summary enforceability of the Vermont lien "was not basic to [the Court's] decision." (State of Alabama, Department of Revenue's Brief in Opposition at 7.) Yet, the distinction is fundamental, because Alabama law - contrary to the State's assertion - does not permit summary enforcement of tax liens. Rather, the statute cited by the State permits enforcement only after the appeals period following a final assessment has expired, not before. *See* Alabama Code 40-29-23(a) ("If any person liable to pay any <u>final assessment</u> of tax neglects or refuses to pay the same or fails to appeal such <u>final assessment</u> within 30 days, it shall be lawful for the

---

[7] The court notes that the amount of at least one of the assessments was, in fact, changed between the time of the preliminary assessment and final assessment. For example, the penalty amount of $543.17 recited in the preliminary assessment for 1991 was increased to $599.36 in the subsequent final assessment for that year. *See* Defendant State of Alabama's Evidentiary Submission in Opposition, Exhibit 5 at 6-7.

13

commissioner to collect such tax [by] levy upon all property ... belonging to such person") (emphasis supplied). Final assessment in this case occurred on January 20, 1994. Thus, the state's power to summarily enforce its lien arrived 30 days later, six months too late to prime the federal liens.

In summary, Alabama's tax liens were not perfected upon notice and demand for two reasons. First, the amounts of the liens were subject to revision upon timely objection by the Resslers, and thus were not fixed at the time notice and demand was sent. Second, Alabama tax authorities had no power to enforce liens against the Resslers until 30 days after the State had issued a final assessment of their tax liability, an event which occurred six months after federal taxes were assessed. Accordingly, Alabama's liens were not "first in time" for purposes of priority over federal liens.

That determination does not end the court's inquiry, however, because there are limited statutory exceptions to the common law rule. The second question before the court is whether the State tax liens fall into one of the categories of liens enumerated in 26 U.S.C. § 6323(a), which are exempt from the "first in time, first in right" rule.

B. Is the State a "judgment lien creditor"?

Title 26, United States Code, Section 6323(a) creates certain exceptions to the "first in time, first in right" rule of priority:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest,

14

> mechanic's lienor, or judgment lien creditor until notice
> thereof which meets the requirements of subsection (f)
> has been filed by the Secretary.

Under this provision, federal liens which have not yet been filed cannot prime certain non-federal liens. The State contends it is entitled to the protection of § 6323 as a judgment lien creditor by virtue of either its final assessment on January 20, 1994, or its notice of lien filed on February 11, 1994. Both events occurred before the IRS recorded its liens in Cullman County Probate Court on May 13, 1994.[8] Thus, this court must determine whether those acts were sufficient to bring the State's liens under § 6323's protective wing.[9]

Although the term, "judgment lien creditor," is not defined in the statute, the Supreme Court has interpreted it "in the usual, conventional sense of a judgment of a court of record...." *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953). In *Gilbert Associates*, the Court considered "whether the Town of Walpole, New Hampshire, or the Federal Government has the prior right to a fund in the hands of a state court receiver of the respondent-taxpayer, an insolvent corporation." *Gilbert Associates*, 345 U.S. at 362, 73 S.Ct. at 702. The Supreme Court of New Hampshire held that the town's assessments for ad valorem taxes, which preceded filing of the federal government's tax liens, were "in the nature of a judgment"

---

[8] *See supra* stipulation 8 at page 3.

[9] The state obtained a judgment in the Probate Court of Cullman County, Alabama on December 16, 1994, but that judgment came too late to prime the federal tax liens.

15

under the law of New Hampshire, making the town a judgment creditor under 26 U.S.C. § 3672: the predecessor statute to § 6323. The United States Supreme Court reversed, holding that, although "[t]he state is free to give its own interpretation for the purpose of its own internal administration, ... the meaning of a federal statute is for this Court to decide." *Id.* at 363, 73 S.Ct. at 703. The Court elaborated:

> A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" in § 3672 [now § 6323] in the usual, conventional sense of a judgment of a court of record, since all states have such courts. We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something "in the nature of a judgment, while in other states the taxing authorities act quasi-judicially and are considered administrative bodies."

*Id.* at 364, 73 S.Ct. at 703-04.[10] Thus, the Court concluded that "whatever the tax proceedings of the Town of Walpole may amount to for the purpose of the State of New Hampshire, they were not such proceedings as resulted in making the Town a judgment creditor within the meaning of § 3672 [now § 6323]." *Id.* at 365, 73 S.Ct. at 704. This court finds that analysis persuasive in the present case.

The principle of "uniformity" would be undermined if each state could decide that its particular procedures for assessing and

---

[10] The Court noted one tax treatise's agreement that "assessments, though they may be enough like judgments to definitely establish a demand for taxes, are not technical judgments." *Gilbert Associates*, 345 U.S. at 364 n.2, 73 S.Ct. at 704 n.2 .

16

recovering past-due taxes rendered it a judgment lien creditor entitled to priority even without a conventional court judgment. That is essentially what the State of Alabama is asking this court to do — deny priority to federal liens which arose and were recorded before the State reduced its liens to judgment. Admittedly, the State issued its final assessment and recorded its liens before the IRS recorded its liens. The State did not, however, reduce its liens to judgment in a court of record before the IRS recorded its liens. Under the holding of *Gilbert*, such a judgment is necessary to garner the protection of § 6323.

Accordingly, the State's reliance on *State v. Woodroof*, 46 So. 2d 553 (Ala. 1950), and the Department of Revenue's view that a final assessment is "like a judgment," are unavailing. Neither the Alabama Supreme Court's nor the Department of Revenue's internal understanding of the nature of the State's tax recovery procedures is dispositive on this federal question, particularly in light of the Supreme Court's contrary holding in *Gilbert Associates*.

Additionally, United States Department of Treasury regulations interpreting the phrase, "judgment lien creditor," instruct that: "The term 'judgment' does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity such as the action of State taxing authorities." 26 C.F.R. § 301.6323(h)-1(g). The Supreme Court has long recognized that an agency's interpretation of a statute it is charged with enforcing should be given "considerable weight," and should not be

17

disturbed unless it appears from the statute or legislative history that Congress intended a different construction. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). No contrary intent is evident.

Although the State claims that the Supreme Court's decision in *United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965), raises doubts about the present validity of *Gilbert Associates*, this court disagrees. *Speers* simply is not applicable to the present case: it involved priority rights conferred by federal bankruptcy laws, not priority rights conferred based on a particular state's tax assessment procedures. Thus, as the Supreme Court recognized, *Speers* raised "no problem of evaluating widely differing state laws, ... no possibility of unequal application of the federal tax laws, depending upon variances in the terms and phraseology of different state and local tax assessment statutes and judicial rulings thereon." *Speers* at 271, at 414. Rather, it involved "an unequivocal statement by Congress that [a trustee in bankruptcy] shall have 'all' the rights of a judgment lien creditor...." *Id*. In the absence of any similar pronouncement by Congress or the Supreme Court with regard to state tax liens like those at issue in this case, the State of Alabama is not entitled to invoke the status of a judgment lien creditor to ward off the priority of federal tax liens.

Finally, the State suggests that a failed Congressional effort

18

to clarify the phrase "judgment creditor" supports its rendering of the term. The proposed legislation purportedly would have made clear that § 6323 does not protect those who "have not actually obtained a judgment in the conventional sense." From the failure of that legislation, the State seems to be suggesting that this court should infer that such a construction of the phrase was rejected by Congress. An equally valid inference, however, is that such a clarification was unnecessary given the clear holding of *Gilbert Associates*.

Although this court concedes that the State of Alabama may be the "sovereign more diligent," in the sense that it recorded its liens first, § 6323 requires diligence of a specific sort: *i.e.*, diligence in obtaining a judgment in a court of record. In that regard, the State's delay in obtaining such a judgment is fatal to its claim of priority.

### IV. DEFENDANT PAUL RESSLER'S MOTION TO COMPEL SETTLEMENT

Ressler claims a settlement was reached under which both the State of Alabama and the IRS agreed to release all tax liens against Ressler in exchange for his payment of $32,000. Such a scenario would permit Ressler to remove himself from the priority dispute between the State and the IRS. Yet, Ressler presents no evidence to support a finding that such a settlement exists.

The United States concedes that Ressler made a settlement offer, but the United States' two written responses to that offer clearly, and in bold print, state: "Unless you receive a formal

19

notice of acceptance from this office, the Department is in no way committed to a settlement." (Response of United States to Motion to Compel Settlement, Exhibits 1 and 2.) No such "formal notice of acceptance" is before the court. Thus, the court finds that no settlement agreement was reached, and Ressler's motion is due to be denied.[11]

### V. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is due to be granted, and defendant Paul Ressler's motion to compel settlement is due to be denied. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this  16th  day of March, 1998.

_____
United States District Judge

---

[11] The court recognizes Ressler's need to have the tax liens on his property released by impleading a sum of money ($32,000) into this court. The IRS has agreed to accept that sum as substituted collateral for its tax liens, but the State of Alabama apparently has not so agreed. In the absence of such an agreement, the court must deny Ressler's motion.