FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 JUL 17 PM 2:45

N.D. OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-96-S-2464-NE |
| ) | |
| ELEANOR FAY RESSLER, PAUL ) | |
| EUGENE RESSLER, CULLMAN ) | |
| SAVINGS AND LOAN ASSOCIATION, ) | ENTERED CM |
| and STATE OF ALABAMA ) | |
| DEPARTMENT OF REVENUE, ) | |
| ) | JUL 17 1998 |
| Defendants. ) | |

MEMORANDUM OPINION

The United States filed this action on behalf of the Internal Revenue Service ("IRS"), to foreclose its liens upon two parcels of real property formerly jointly owned by defendants Paul Ressler and Eleanor F. Ressler. On June 5, 1998, the United States filed a motion for summary judgment seeking to reduce its federal tax assessments against Eleanor F. Ressler to judgment and seeking an order of foreclosure and sale. Those parcels now are jointly owned by Paul Ressler and the State of Alabama, which by sheriff's deed executed on December 16, 1994, foreclosed against Mrs. Ressler's undivided interest in the property to satisfy liens arising from her unpaid state tax liabilities. The federal and state tax liens both arise from tax years 1988 through 1992.

By order entered March 17, 1998, this court granted the IRS' motion for partial summary, finding that the federal tax liens have priority over the state tax liens. (Doc. No. 25.) Execution of the sheriff's deed on behalf of the State, therefore, did nothing

33

to extinguish the IRS's prior interest in the property. "[O]nce a lien has attached to an interest in property, the lien cannot be extinguished ... simply by a transfer or conveyance of the interest." *United States v. Rodgers,* 461 U.S. 677, 691 n.16, 103 S.Ct. 2132, 2141 n.16, 76 L.Ed.2d 236 (1983). Thus, any interest conveyed to the State of Alabama by execution of the sheriff's deed remains subject to the prior liens of the United States. Moreover, the interests of both the IRS and the State of Alabama are subject to a first mortgage held by Cullman Savings and Loan Association on the larger of the two parcels. (See Stipulation No. 2.)

The IRS now moves the court for summary judgment to permit foreclosure and judicial sale of both parcels, with net proceeds distributed subject to Cullman Savings' mortgage interest and Paul Ressler's one-half interest. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be granted.

### I. STIPULATED FACTS

Following a pretrial conference on October 9, 1997, the parties entered into the following stipulations:

1. Prior to 1990, defendants Eleanor Ressler and Paul Ressler jointly acquired two parcels of real property in Cullman County, Alabama. The first parcel was approximately 31 acres and identified with a street address of 1104 County Road 998. The second parcel was approximately one acre and identified with a street address of 1121 County Road 998.

2. Cullman Savings Bank has a mortgage lien against the 31-acre parcel which is senior to all other liens against that parcel, including the federal and state tax liens.

2

3. Federal income taxes were assessed against Eleanor Ressler based on tax returns filed with the Internal Revenue Service, on the dates and for the amounts stated below:

| YEAR | Date Return Received | Date Tax Assessed | Unpaid Amount of Assessment |
|---|---|---|---|
| 1988 | June 16, 1993 | August 16, 1993 | $30,984.40 |
| 1989 | June 16, 1993 | August 23, 1993 | $36,488.69 |
| 1990 | June 16, 1993 | August 30, 1993 | $25,566.14 |
| 1991 | June 16, 1993 | August 30, 1993 | $23,074.22 |
| 1992 | June 14, 1993 | July 19, 1993[1] | $23,022.11 |

4. On July 30, 1993, the State of Alabama entered and mailed Notices of Tax Determination and Demand for Payment to Eleanor Ressler for state income tax liabilities for the years 1988 and 1989. On August 3, 1993, the State of Alabama entered and mailed Notices of Tax Determination and Demand for Payment to Eleanor Ressler for state income tax liabilities for the years 1990, 1991, and 1992. The state income tax liabilities approximated $17,000.

5. The State of Alabama made preliminary income tax assessments against Eleanor Ressler for those same tax years for an adjustment to the admitted tax liabilities to the State of Alabama on October 22, 1993, which totaled approximately $17,000.

6. The State of Alabama made five final income tax assessments for those same tax years for an adjustment to the admitted tax liabilities to the State of Alabama on January 20, 1994, which totaled approximately $17,000.

7. On February 11, 1994, the State of Alabama filed a Notice of Lien for Taxes in the Office of the Judge of Probate, Cullman County, Alabama for the state income tax liabilities of Eleanor Ressler for the three years 1988 to 1992.

8. On May 13, 1994, the Internal Revenue Service filed a

---

[1] The State of Alabama did not stipulate to these dates for the 1992 tax year. Any potential discrepancy in the dates, however, was resolved by the court's entry of partial summary judgment in favor of plaintiff, or is irrelevant to the issue now before the court.

3

        Notice of Federal Tax Lien in the Office of the Judge of Probate, Cullman County, Alabama for the federal income tax liabilities of Eleanor Ressler for the years 1988 to 1992.

9.   A Sheriff's Deed concerning the two subject parcels was executed in favor of the State of Alabama on December 16, 1994 based on a judgment execution by the State of Alabama against the remaining interest of Eleanor Ressler. The Sheriff's Deed was signed on June 13, 1995, and recorded in Cullman County Probate Court on January 17, 1997. The State of Alabama did not provide notice to the Internal Revenue Service of the described execution and deed. The Sheriff's Deed did not alter or foreclose any prior interests, liens, or levies of either the State of Alabama or the Internal Revenue Service.

10.   The United States filed this foreclosure action on September 19, 1996 and filed a Notice of Lis Pendens with the Office of the Judge of Probate, Cullman County, Alabama on or about the same day.

(Stipulated Facts filed November 12, 1997: Doc. No. 22.)

## II. DISCUSSION

**A. What Are Eleanor Ressler's Federal Tax Liabilities?**

The IRS supports its assertions regarding the amount of Mrs. Ressler's tax liabilities with certificates of assessment against her, and the declaration of Tara Wells, who is an IRS revenue officer. (See Plaintiff's Exhibits 1 and 2; Wells Declaration ¶ 1.) Wells authenticates the certificates of assessment, and states that the unpaid balance of Eleanor Ressler's federal tax liabilities as of April 30, 1998, is $188,386. (Wells Declaration ¶¶ 4-6.)

Once the United States presents evidence of an assessment of tax due, a presumption arises that the assessment is correct and the burden is then cast upon the taxpayer to go forward with

4

evidence to the contrary, and to show by a preponderance of the evidence that the determination is incorrect. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *United States v. Chila*, 871 F.2d 1015, 1017-18 (11th Cir.), cert. denied, 493 U.S. 975 (1989); *United States v. Running*, 7 F.3d 1293, 1297 (7th Cir. 1993). Neither Mrs. Ressler nor Cullman Savings and Loan Association have filed a response to the IRS's motion. The State of Alabama filed a response in which it states that it does not oppose the motion. (See State of Alabama's Response ¶ 1 (Doc. No. 31).) Defendant Paul Ressler filed a response opposing the IRS's motion, but neither his brief nor the attached affidavit refutes the accuracy of the IRS's assessments. (See Opposition to Government's Motion for Summary Judgment (Doc. No. 30); Paul Ressler Affidavit.)

Because defendants have declined to rebut the presumption of correctness of the tax assessments, the court concludes there is no genuine issue of material fact as to the amount of the federal tax assessments against Mrs. Ressler. That determination does not end the court's inquiry, however.

**B.   Can The Entire Property Be Sold?**

The Internal Revenue Code provides that the United States may properly impose a lien on a taxpayer's property when he or she is "liable to pay any tax" and "neglects or refuses to pay the same after demand, ..." 26 U.S.C. § 6321 (1989). The Code further permits the United States to commence a civil action to have the

5

lien reduced to judgment and to seek a decree for the sale of the <u>entire</u> property in which the delinquent taxpayer has an interest. 26 U.S.C. § 7403(a) (1989); *see also United States v. Rodgers*, 461 U.S. 677, 693-94, 103 S.Ct. 2132, 2142, 76 L.Ed.2d 236 (1983)(holding that § 7403 "contemplate[s], not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution").

Paul Ressler opposes summary judgment essentially because foreclosure will force the sale of his homestead and egg farm (which is his sole source of income) to pay tax liabilities which are not his own. It is undisputed that the federal tax assessments at issue in this action are solely the liabilities of his now estranged wife, Eleanor Ressler.[2] (*See* Paul Ressler Affidavit at 1.) Unfortunately for Mr. Ressler, § 7403(a) of the Internal Revenue Code provides not only that the IRS may "enforce [its] lien," but also that it may seek to "subject any property, [of] whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."

Indeed, a district court has only limited discretion to decline to order the forced sale of a delinquent taxpayer's property under § 7403. *Rodgers*, 461 U.S. at 709-710, 103 S.Ct. at 2150-52. When third parties with an interest in the subject

---
[2] Mr. Ressler avers that he and his wife have not lived together for "a substantial period of time," and currently are in the process of obtaining a divorce. (Paul Ressler Affidavit at 1.)

6

property—like Mr. Ressler and Cullman Savings—are involved, the court's discretion is guided by consideration of the following factors: (1) the extent to which the government's financial interests would be prejudiced if it were relegated to a forced sale of only the taxpayer's partial interest; (2) whether the non-liable third party with a separate interest in the property has a legally recognized expectation that his or her separate property will not be subject to a forced sale by the taxpayer's creditors; (3) the likelihood of prejudice to the third party, both personal dislocation costs and practical undercompensation; and (4) the relative character and value of the interests held in the property. *Rodgers*, 461 U.S. at 709-711, 103 S.Ct. at 2150-52. Significantly, the Supreme Court has emphasized "that the limited discretion afforded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711, 103 S.Ct. at 2152. Nevertheless, the Court recognizes that "financial compensation may not always be a completely adequate substitute for a roof over one's head." *Id.* at 704, 103 S.Ct. at 2148.

1. **Prejudice to IRS from partial sale**

The IRS asserts that "[s]ale of the partial interest may be practically impossible, or may net far less than the market value of the interest if the property were sold as a whole, so that the Government would be unable to satisfy its tax liens." (Plaintiff's Motion at 6.) Mr. Ressler offers no evidence that sale of only

7

Mrs. Ressler's one-half interest is either possible, or preferable. The court finds the IRS's argument persuasive. Often, "interests in property, when sold separately, may be worth ... significantly less than the sum of their parts." *Rodgers*, 461 U.S. at 694, 103 S.Ct. at 2143. Accordingly, this factor weighs in favor of sale of the entire property.

2.  **Non-liable party's expectation of no forced sale**

Mr. Ressler does not argue, and the court's review of the record does not suggest, that he had a legally recognized expectation that his wife's creditors would not be permitted to force the sale of the entire property to pay her debts. Thus, this factor does not support exercise of this court's limited discretion under § 7403.

3.  **Likely prejudice to non-liable party**

Mr. Ressler argues that he will suffer "an incredible hardship" from a forced sale of the entire property, because the sale will "destroy[]" the egg business which provides his sole source of income, and will require him to find a new home. (Paul Ressler Affidavit at 1.) He also states that he has "been making all financial payments for any and all debts in any way related to said property, including but not limited to utility payments, etc.," while neither the State of Alabama nor the IRS has contributed to the enrichment, maintenance, or payment of the mortgage on the property. (Paul Ressler's Opposition to Government's Motion ¶¶ 2, 12.) Finally, Mr. Ressler contends his

8

daughter, Paula, will be prejudiced from a forced sale, because she will have to return from New York to arrange the sale of her house trailer, which currently is located on a portion of the subject property.

Mr. Ressler's argument on his daughter's behalf is misplaced. She has not asserted any separate property interest in the subject property. Thus, the court's limited discretion to bar a forced sale does not apply to her, and any prejudice which might accrue to her as a result of a forced sale is irrelevant under § 7403. *See Alden v. United States*, C-88-4306 SBA, 1994 WL 722743, *3-4 (N.D. Cal. 1994)(holding that mere co-tenant had no separate property interest which was relevant to inquiry under § 7403).

Similarly, the court is not persuaded that Mr. Ressler's diligence in paying his mortgage and maintaining the property take this case into the rarefied realm which would justify exercise of this court's discretion under § 7403. *See Rodgers*, 461 U.S. at 709-10, 103 S.Ct. at 2150-51 (holding that the court should exercise its discretion to decline a forced sale based only upon a "fairly limited set of considerations"). Mr. Ressler has not demonstrated that the loss of his personal residence involves any special circumstances which render this an exceptional case. *See United States v. Bierbraeur*, 936 F.2d 373 (8th Cir. 1991)(holding that "the inherent indignity and inequity of being removed from one's home" does not automatically tip the scales of prejudice in favor of the non-liable third party).

9

Mr. Ressler's plea of prejudice regarding the effect of a forced sale on his livelihood, however, carries more force than either of the preceding arguments. In *Bierbraeur*, there was "no evidence before [the court] that [the non-liable third party's] personal dislocation costs were greater than in any other foreclosure against a residence to satisfy a tax lien." *Bierbraeur*, 936 F.2d at 375. Here, however, Mr. Ressler has averred that a forced sale would result in the destruction of the egg business which is his sole source of support. Accordingly, the court finds that this factor weighs in favor of declining to order a sale.

### 4. Relative character and value of property interests

The Resslers each held an undivided, one-half interest in the subject property. The court is presented with no evidence that Mr. Ressler's interest in the subject property is superior to his wife's in any respect. Thus, this factor also weighs against the exercise of this court's discretion to bar a forced sale.

Upon a careful review of the circumstances of this case, the court is convinced that Mr. Ressler will be harmed by the forced sale of the entire property. On that basis, this court is persuaded that settlement is preferable to a forced sale of the entire property and potential destruction of Mr. Ressler's egg business. Settlement negotiations apparently have been ongoing throughout this litigation, and in brief, Mr. Ressler indicates that he has arranged bank financing which would provide funds which

10

could be used to satisfy the liens against the subject property. The parties are encouraged to vigorously pursue that settlement option, or any others which would avoid a forced sale.

Nevertheless, based upon this court's review of the relevant considerations set out in *Rodgers*, the court finds the United States' "paramount interest in prompt and certain collection of delinquent taxes" outweighs the potential harm to the non-liable spouse, Mr. Ressler. Mr. Ressler's one-half interest in the property will be fully compensated through the sale, and he has not demonstrated special circumstances or exceptional harm which would take this case outside the realm of a typical foreclosure. Accordingly, exercise of this court's limited discretion under § 7403 to bar the sale of the entire property is not warranted.

### III. CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 17th day of July, 1998.

United States District Judge

11